Avert, J.
The plaintiffs in error claim that the certificate and
papers from the general land-office, offered as evidence by them upon the trial, ought not to have been rejected, as they would have proved the patent void, and thus have prevented a recovery in the action. Such a result, it is said, must follow, because there is a defect of evidence to justify the issuing of the patent, and even proof in the evidence *itseif that the patent ought not to have been issued. To the first part of the objection it must bo replied that the sufficiency of the proof is a question to be settled by the proper authority vested with power to issue the patent. The legal title may pass from the government by the grant, and be held in trust for the owner of the equity, and the equitable right to the land will bo afterward inquired into and determined by the court. As to the remaining part of the objection, the evidence, it is believed, does not establish the position which is taken—does not show that the warrant was not given *55 for services in the Virginia line on continental establishment. On the contrary, there is a direct reference to vouchors recognizing the services, as on continental establishment. There is no doubt that a case may arise in which our courts would declare a patent from, the United States to be void, and decide, in an action of ejectment, that no legal title had passed by it. The authorities cited by the plaintiffs counsel, would, in a proper case, sustain such a decision. But the present, we think, is not a proper case. It does not present the facts, which, according to the authorities referred to, or any within our knowledge, would justify the court in pronouncing the patent void. There was no error in rejecting this evidence by the court of common pleas. Was there any error in rejecting the deed conveying the tax title? The tax sale under which the defendant in ejectment claimed, took place in 1827 ; the patent from the United States, showing the plaintiff’s title, which was the first legal title granted, was not then in existence, but was dated in 1844. Now it is very clear, as a general proposition, that no moré equitable title is admissible in evidence in an action of ejectment, though it be earlier in date, to defeat a legal title. Did the law which authorized this tax sale overturn the settled principles governing the action before?
This law, it is true, provides that the deed shall convey to the tax purchaser a good and valid title, both in law and equity. The deed, nevertheless, did not, according to all former notions of the law, convey any legal title. If it is *claimed-that it does so under this law, it must be because a new description of legal title is here created, or a. new principle introduced in the law governing ejectments. I do not know that in behalf of a tax purchaser any unusual mode of interpretation is to bo adopted by the court. This law, like all others of the kind, was intended to operate upon the land owned by the tax-payer, and liable to be sold for the tax. Over his title, both equitable and legal, it is conceded the legislature had ample power and control, and to enforce the payment of taxes might at any time, when necessary, have sold it. Now it is well, known that the legal title to a large body of the land having passed by grant from the government, was already vested in the tax-payers; and that a largo class of eases existed in which the legal title was in one person and the equitable interest in another. In such a state of things it was natural enough for tho legislature, intending to tax the land and *56 resort to the land for payment, to insert a provision in the law that the purchaser should take the title, both in law and equity. Such a provision would be applicable in numerous eases, and likely to stimulate the owners, both of the legal and equitable title, to he prompt in paying the taxes.
Wo may give to this tax law, then, a general operation, such as was doubtless contemplated at the time of its passage, without construing it to have introduced a new and strange definition of a legal title, or assumed to exercise control over a legal title, while it yot remained in the United States, and not subject to be taxed.
Under this view of the tax law, according to the provisions of which tho premises were sold, it will appear, that there was no error in rejecting the tax deed. The judgment, therefore, of the common pleas is affirmed.